# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

No. 24-881V

```
* * * * * * * * * * * * *
JOSHUA KASABIAN,              *
                              *
            Petitioner,       *        Filed: June 9, 2026
                              *
v.                            *        Chief Special Master Corcoran
                              *
SECRETARY OF HEALTH           *
AND HUMAN SERVICES,           *
                              *
            Respondent.       *
* * * * * * * * * * * * *
```

*Alison Haskins,* Siri & Glimstad, LLP, Aventura, FL, for Petitioner.

*Alexa Roggenkamp,* U.S. Department of Justice, Washington, D.C., for Respondent.

### DECISION GRANTING FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On June 10, 2024, Joshua Kasabian filed this action seeking compensation under the National Vaccine Injury Compensation Program (the "Program").[2] Petition (ECF No. 1) ("Pet."). Petitioner alleged that he suffered from serum sickness/post-viral syndrome and/or Celiac disease as a result of receiving an influenza ("flu") vaccine on November 21, 2023. Pet. at Preamble. On May 20, 2025, Petitioner filed a motion to dismiss his claim, and a Decision ending the case was entered the same day. Decision (ECF No. 52).

Petitioner was originally represented by Mr. Andrew Downing, from the initiation of the claim through January 16, 2025. *See* Consented Motion to Substitute Attorney (ECF No. 18). Petitioner filed a Motion for Interim Attorney's Fees and Costs at the time of Mr. Downing's

---

[1] This Decision will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "The Program" or "Program"]. Individual section references hereafter will be to Section 300aa of the Act.

withdrawal, requesting a total of $19,209.20 ($18,511.00 in fees, plus $698.00 in costs). Pet. Interim Fee Motion ("Int. Fee Mot.") (ECF No. 16).

Respondent filed a response on January 21, 2025 opposing an interim fees award on the grounds that the claim lacked reasonable basis. Respondent ("Resp.") Response (ECF No. 19). He also contended that Petitioner could not demonstrate that the claim could meet the Vaccine Act's "severity requirement." Response at 5; *see also* Section 11(c)(1)(D)(i). The medical records only demonstrated four months of symptoms Petitioner associated with his alleged injury. Response at 7. Further, Respondent argued that claims for Celiac disease have been "repeatedly denied" in the Vaccine Program, Petitioner had not supported his claim with an expert opinion, and none of Petitioner's treating providers associated his Celiac disease with the flu vaccine. *Id.* at 7-8. Petitioner filed a Reply to Respondent's opposition on January 21, 2025. Pet. Reply (ECF No. 20).

Respondent subsequently filed a Rule 4(c) Report formally opposing compensation on January 31, 2025, for reasons consistent with those set forth in his fee request opposition. Resp. Report (ECF No. 21). After a status conference with the special master previously assigned to this matter in early May 2025, Petitioner filed a motion to dismiss, and the matter formally ended. (ECF No. 28); *see also* Decision (ECF No. 29).

On July 7, 2025, Petitioner filed a motion for a final fees award. Pet. Mot. for Final Fees ("Final Fees App.") (ECF No. 32). In it, Petitioner requested $10,975.58 ($10,806.00 in fees and $169.58 in costs) for work performed by his current counsel. Final Fees App. at 1-3. Respondent reacted to this second fees request on July 21, 2025, continuing to argue that Petitioner's claim was never filed with reasonable basis (as the special master who had presided over the claim had purportedly recognized). Resp. Response to Final Fees at 8 (ECF No. 33). Petitioner replied to Respondent's response on July 28, 2025, again asserting that the claim was brought with reasonable basis and good faith. Pet. Reply to Final Fees Motion (ECF No. 34).

For the reasons set forth below, I hereby **GRANT** the pending fees motions in part, awarding final fees and costs in the total amount of **$28,333.98.**

## ANALYSIS

### I.    Applicable Legal Standard

Motivated by the desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that fees and costs in Vaccine Act matters may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344; *see also Sebelius v. Cloer,* 133 S.Ct.1886, 1895 (2013) (discussing this goal

when determining that attorney's fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012). It may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that fees be reimbursed for every losing petition. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Thus, there is a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs in a case in which compensation was not awarded only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Even meeting this standard does not guarantee a fee award, since special masters are still empowered by the Act *to limit or deny fees entirely* to unsuccessful litigants. *James-Cornelius ex rel E.J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

The Circuit has established a two-prong test for evaluating the propriety of fees in an unsuccessful case. First, there is a subjective inquiry, in which it is assessed whether the petition was brought in good faith, followed by an objective inquiry, when the claim's reasonable basis is evaluated. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 689 (2014)).

"Good faith is a subjective test, satisfied through subjective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020). "[T]he 'good faith' requirement … focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Cases in which good faith has been found to be lacking often involve petitioners who failed to produce or actively concealed evidence undermining their claims. *Purnell-Reid v. Sec'y of Health & Hum. Servs.*, No. 18-1101V, 2020 WL 2203712 (Fed. Cl. Spec. Mstr. Apr. 6, 2020); *Crowding v. Sec'y of Health & Hum. Servs.*, No. 16-0876V, 2019 WL 1332797 (Fed. Cl. Spec. Mstr. Feb. 26, 2019); *Heath v. Sec'y of Health & Hum. Servs.*, No. 08-0086V, 2011 WL 4433646 (Fed. Cl. Spec. Mstr. Aug. 25, 2011); *Carter v. Sec'y of Health & Hum. Servs.*, No. 90-3659V, 1996 WL 402033 (Fed. Cl. Spec. Mstr. July 3, 1996). And attorney conduct in prosecuting a claim can be relevant. *Purnell-Reid*, 2020 WL 2203712, at *6.

Assessing reasonable basis, by contrast, involves "an objective test, satisfied through objective evidence." *Cottingham*, 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but [goes] more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). As the Federal Circuit recently

3

explained, "a reasonable basis analysis is limited to objective evidence, and . . . subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius ex rel E.J.*, 984 F.3d at 1379. Stated differently, a claim that on its face (without any weighing of the evidence) is not supported by the materials required by the Vaccine Act for a special master to be able legally to award compensation does not have a reasonable basis. *Good Game v. Sec'y of Health & Hum. Servs.*, 157 Fed. Cl. 62, 68 (2021).

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirthshafter v. Sec'y of Health & Human Servs.*, 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted, however, that 'a petitioner must furnish *some evidence* in support of the claim.'" *Id.* (quoting *Chuisano*, 116 Fed. Cl. at 288, emphasis added in *Wirthshafter*).

Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham*, 971 F.3d at 1345–46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y Health & Hum. Servs.*, 159 Fed Cl. 328, 333 (Fed. Cl. 2022) ("*Cottingham II*"). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham*, 971 F.3d at 1346). Further, the standard of establishing "more than a mere scintilla of evidence" cannot be met where the evidence is so contrary that a feasible claim is impossible. *Cottingham v. Sec'y of Health & Hum. Servs.*, 154 Fed. Cl. 790, 795 (2021).

Furthermore, determining reasonable basis is not a static inquiry. Reasonable basis which may have existed when a claim was filed can cease to exist as further evidence is presented, revealing the claim's lack of objective support on an ongoing basis. *Perreira*, 33 F.3d at 377. In *Perreira*, the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## II.      Fees are Permissible in this Matter Despite its Facially Weak Character

Petitioner's claim had sufficient objective evidence to support it despite the readily-apparent weaknesses that Respondent has identified (and which likely encouraged Petitioner to seek its early dismissal). A finding of reasonable basis requires no more than a *scintilla* of objective evidence—a burden much lower than the preponderance of evidence standard required for entitlement. It is also well-established that an expert report addressing causation is not

necessary to show that a claim had reasonable basis. *James-Cornelius v. Sec'y of Health & Hum. Servs.,* 984 F.3d 1374, 1379-80 (Fed. Cir. 2021). Affidavits or sworn statements may themselves stand as objective evidence that can be invoked in support of reasonable basis (as well as in establishing entitlement). *James-Cornelius,* 984 F.3d at 1380-81.

The record in this case demonstrates that Petitioner received a covered flu vaccine on November 21, 2023. Ex. 2. That same day, he sought care at the emergency department for an "abnormal sensation in his left arm and bilateral legs," along with a "feverish feeling, fatigue, dizziness, and malaise." Ex. 8 at 12, 21. The following day, Petitioner saw his primary care physician where he reported symptoms of numbness in his left arm and legs. Ex. 9 at 6. He was diagnosed with an "adverse effect of influenza vaccine." *Id.* at 7.

Petitioner thereafter continued to associate symptoms of paresthesia, headaches, and dizziness to the flu vaccine he received on November 21, 2023. *See e.g.* Ex. 10 at 81-82 ("LLE numbness after a flu vaccine on 11/21.  His symptoms began the same day he had the vaccine"). Additionally, some treaters associated his symptoms with a possible reaction to the flu vaccine. *See* Ex. 13 at 4 ("[a]t this time his symptoms seem more in line with a post-vaccination hypersensitivity reaction…"). As his treatment progressed, Petitioner's symptoms became more attributable to a possible gluten allergy, as observed by an allergist. Ex. 5 at 5. Symptoms of dizziness and paresthesia resolved by April 2024 (albeit aided by the elimination of gluten from his diet). Pet. Ex. 15 at 10.

As Respondent correctly observes, the specific alleged harm of serum sickness could not, on this record, be shown to meet the Act's six-month severity requirement. Response at 5; *see also* Section 11(c)(1)(D). However, Petitioner also alleged that his later diagnosed Celiac disease was caused by the flu vaccine, and that the symptoms he initially attributed to the alleged serum sickness were not only Celiac-related, but had residual effects that lasted more than six months from onset (the day of vaccination). *See* Ex. 16 at 20; Ex. 18 at 17 (Message dated May 24 2024 confirming diagnosis of Celiac's disease, recommending strict gluten free diet, and bone density scan), 87 (Bone density scan dated June 28, 2024 demonstrating "slight decreased bone density [in] lumbar spine.). Further, in initially reviewing the matter in early May 2025,[3] the special master who had presided over it deemed the claim at least to possess reasonable basis as of that time (although not beyond). Scheduling Order at 3 (ECF No. 27). Petitioner promptly dismissed his claim in response.

Thus, although this claim was ultimately unsuccessful and facially weak, I find there was sufficient objective evidence to entitle him to a reasonable fee and costs award. In light of the

---

[3] This action was first assigned to the "Special Processing Unit," but then transferred out to a now-retired special master in January 2025 – after the filing of the Rule 4(c) Report (as well as after the withdrawal of initial counsel). The claim thereafter remained active only for a little more than three additional months.

exceedingly lenient standard that governs reasonable basis determinations, a final award of fees and costs in this matter is permissible. And because I find no reason otherwise to deny a fees award, I will allow one herein.

### III.    Calculation of Attorney's Fees

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348.  This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely*, 461 U.S. at 429–37.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)).  A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner is requesting the following rates for her attorneys (former and present) and support staff, based on the years work was performed:

|  | 2024 | 2025 |
|---|---|---|
| Andrew Downing | $485 | N/A |
| Ann Allison | $435 | N/A |
| Samantha Perez | $175 | N/A |
| Alex Malvick | $175 | N/A |
| Alison Haskins | N/A | $525 |
| Tara Thorn | N/A | $195 |
| Ashton Wright | N/A | $195 |
| Melissa Vraspir | N/A | $195 |
| Jeanna Reed | N/A | $195 |

The attorneys at Petitioner's former and current counsel's firms have been recognized to practice in forum, thus entitling them commensurate rates established in *McCulloch*. *See Rossiter v. Sec'y of Health & Hum. Servs.,* No. 20-1888V, 2023 WL 3778899, at \*2 (Fed. Cl. Spec. Mstr. June 2, 2023). The rates requested by Petitioner in the interim fees request and the final fee request are consistent with what has been previously awarded and accordingly, counsel's hourly rates will not be adjusted.

The time billed to this matter, however, was somewhat unreasonable given the evident factual issues in Petitioner's case and the procedural history of the matter. For example, paralegals for Petitioner's former counsel were billing excessive hours for reviewing routine orders issued by the Court. *See* Int. Fee App., Ex. A at 6-7 (6/10/24: billing 0.30 hours for reviewing an ECF notification and directing appearance of respondent's attorney; 8/29/24: 0.30 for receiving and reviewing ECF notification for activation and reassignment order; 09/04: 0.20 receipt and review of Respondent's notice of appearance; 12/3: 0.30 receive and review non-pdf Scheduling order setting Rule 4(c) deadline). The time spent reviewing these routine orders is excessive and I have reduced attorneys' fees in other cases for such practices. *See e.g. Bronson v. Sec'y of Health & Hum. Servs.,* No. 21-1741V, 2025 WL 2754489, at \*2-3 (Fed. Cl. Spec. Mstr. Aug. 29, 2025) (reducing attorneys' hours spent on routine tasks). And as noted, the claim's weaknesses should have been more evident to counsel, and perhaps should have guided them to dismissal sooner.

Special masters are permitted to employ percentage reductions to hours billed, provided the reduction is sufficiently explained. *See Abbott v. Sec'y of Helath & Hum. Servs.,* 135 Fed. Cl. 107, 111 (2017); *Raymo v. Sec'y of Health & Hum. Servs.,* 129 Fed. Cl. 691, 702-04 (2016); *Sabella v. Sec'y of Health & Hum. Servs.,* 86 Fed. Cl. 201, 214 (2009). Accordingly, I will reduce the attorneys' fees awarded to Petitioner's *former* counsel by *ten* percent, resulting in a **$1,851.10 reduction.**[4]

## IV.    Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 67, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at \*16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioner fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issued. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at \*4 (Fed. Cl. Spec. Mstr. June 30, 2005).

---

[4] The reduction is calculated by: ($18,511.00 x 0.10) = $1,851.10.

### (A) Downing, Allison, & Jorgeson Costs

Petitioner seeks $698.20 in costs, including the filing fee, medical record retrieval costs, and postage costs. Int. Fee Mot., Ex. A at 10. These amounts are routinely reimbursed in the Vaccine Program and Petitioner has submitted sufficient documentation to support these costs. Accordingly, Petitioner's *former* counsel will be reimbursed for the full costs requested.

### (B) Siri & Glimstad, LLP Costs

Petitioner also seek $169.58 in costs, associated with obtaining additional medical records. These costs are also adequately substantiated and reasonable herein.

### CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a fees award, I **GRANT IN PART** Petitioner's Motion for Fees and Costs. I award a total of $28,333.98 reflecting (a) $17,358.10 in fees and costs, to be paid through an ACH deposit to Petitioner's *former* counsel, Andrew D. Downing's, IOLTA account for prompt disbursement; and (b) $10,975.58 in fees and costs, to be paid through an ACH deposit to Petitioner's *current* counsel of record, Alison Haskins, IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[5]

**IT IS SO ORDERED**.

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.

8